We have one case on our docket for oral argument this morning. It's 21-30101, Betts v. Brennan. Mr. Castang. May it please the Court, and good morning again, Your Honor. For the record, my name is Andre Charles Castang. I'm an Assistant Attorney General for the State of Louisiana, and this morning I represent Louisiana State Trooper Ross Brennan. The District Court erroneously denied his qualified immunity-based motion for summary judgment, and I'm here to ask you to reverse it and grant the motion on his behalf. I guess the elephant in the room is the Hanks case, which seems to be factually similar, and the District Court thought that that was clearly established law. So what's your response to that? I think Hanks is – obviously I think Hanks is distinguishable. I think the situation in Hanks differs because with regard to Mr. Betts, he was, particularly at the time he got out of his truck, he, I guess to use a colloquial term, got all bowed up. He took a very aggressive stance, and he said something like, bro, don't touch me, you're going to have to call your people. I think he made both – and before that, when the trooper had put his hand on Mr. Betts' shoulder while Mr. Betts was in his car, Mr. Betts shrugged it off. That in itself isn't dispositive, but when you get that combined with the aggressive posture, combined with the statement that I think a reasonable officer could interpret as he was going to fight him or at least there was a reasonable indication that they was going to be fighting him. You're welcome to keep your mask on, but if you want to take it off. Sorry, I forgot. It makes it a little more difficult for us to – I apologize. But you're welcome to keep it on. I'd rather take it off. I just got going. So there, as you were saying, there was some physical noncompliance here, unlike in Hanks. What is – and then there was the verbal aggressiveness. There was some verbal noncompliance or some verbal questioning in Hanks. And I think I'd even go – I'd go with verbal noncompliance, certainly disagreement. I mean, I think it was more than just, yes, officer. It seems to me there's got to be an overarching principle in these cases, that this was a single officer. And after repeated requests, there was noncompliance to turn and face the car with this so that he, the officer, could see his hands. So how long, how many times does an officer – I mean, it is a safety issue from my perspective because once you're facing the officer and you can't see the hands, you don't know  So it seems to me that there's – at some point, what does an officer do when there is noncompliance? I think, unfortunately, the overarching principle is it's objectively unreasonable to an officer in what he sees at the scene in real time. I think the Supreme Court has said, and this Court has said, it's not susceptible to mechanical interpretation. That makes our job awfully hard. I mean, there are some other principles. There are principles about the officer needs to sort of reasonably gradually escalate. That may not be the phrase. But shouldn't immediately escalate with abrupt violence, I think, is one principle. Yeah, and I don't think – and with regard to that principle, it was not – it certainly was not cases we hear about where there's immediate tasing or immediate force. This went on for, I think, three minutes and a little bit. There were, I think, two dozen orders that were not complied with. We had a situation where even early on Mr. Betz was more than merely disagreeing with the officer's choice, decision to pull him over. You're going to have to tase me. And I think that combined with the incident of the hand on the shoulder, combined with the aggressive posture, combined with the statement that if you touch me, you're going to have to call your people, I think there wasn't much. The verbal noncompliance in Hanks had to do with asking whether he was under arrest or not. There was a – and the investigation found that the officer hadn't clearly told him one way or the other. And the – and I think certainly both in that case and this one, there's – the person who stopped is certainly not happy about being stopped by the police. But in this case, it certainly – it escalated more beyond the kind of complaining to the police officer, saying I wasn't speeding, why'd you do this? We had more than that, and I think that's the more than that that distinguishes this case from Hanks. Are you aware at one point the officer says you're going to need to go to the back of the truck? I'm paraphrasing. It says something about safety. I couldn't tell what he said. Something about safety. Are you aware – this may not be in the record. Is there a standard procedure where an officer is facing sort of a belligerent person and it's go to the back because I want to get you away from the cab or something? I am not – it is not in the record, and I am not aware. I mean, we have cases – I think Hanks says in a footnote that being in the cab presents its own safety issue because obviously you could have a weapon. I mean, I think certainly that's an objectively reasonable position to take, like getting someone away from the cab, for that reason. But I don't know that there – or there's nothing in this record that describes what the practice should be. I mean, our cases also talk about, well, don't choose immediate abrupt force over continuing verbal negotiation. Why couldn't the officer just continue to verbally negotiate? I think at some point the officer, a reasonable officer, can put a stop to it. I mean, it doesn't have to be just a continual negotiation or discussion or argument. I mean, I think at some point the officer is able to take, and I think in Hanks it's calibrated, measures to restrain the individual. And again, we have in this case that there has been escalation. It's been escalation by Mr. Betts with the – I hate to keep repeating myself, but it's with the threatening posture, with the having shoved off the hand on his shoulder, the threatening posture, the statement that you're going to have to call your people. I'd also point out if you – and this shows up better on the repair shop video that Mr. Betts put in the summary judgment record. At one point you can see from the distance there's a pretty significant difference in the size of the two individuals. Mr. Betts is a good-sized individual. I mean, I can't tell you exactly how much each one weighed, but you can see the relative sizes have some difference to it. He was certainly larger than the policeman. Oh, yes. That might have been part of the policeman's problem. Well, I think that certainly goes to the objective reasonableness that you have a police officer who's significantly smaller than Mr. Betts. Mr. Betts has said he's – essentially said he's going to fight back. I think the officer can – a reasonable officer can say, if I get in a physical confrontation with him, that could be dangerous for me. It certainly probably is not something that's going to make it end immediately. And that, on the other hand, the single use of the taser would and did bring it to a very quick stop. When he got out of the truck, did he close the door to the cab? No, Your Honor. So maybe that's why he asked him to move down, get away from the cab. When he was asking at the outset, yes, Your Honor. Not to argue against myself, but out of accuracy, I do think at the time Mr. Betts got out of the truck, at least right before the tasing, the officer had told him to turn around and face the officer. So at that point he was no longer ordering him to get back to the back of the truck. But by that point, I think things had escalated, and he was trying to bring an end to the situation right then. The degree of force here – I mean, I've read all the cases. I mean, we've got a number of taser cases. I wrote one recently called Cloud V. Stone about a tase from a resisting arrest, but then there was a gun, so it's slightly different. There's a single tase, and I don't want to minimize that amount of force. I don't want to get tased once, twice. I don't want to get tased at all. But it's a single tase. It's not one of these cases where there are multiple tases. In the Hanks case, it wasn't. Do you understand the use of force in Hanks? I didn't fully understand it from the description and the opinion. It was called a half spear. I didn't know what that was. I attempted to look at the video that's part of this reference in the opinion, and I wasn't able to call it up. I don't know whether that was a problem with the Wi-Fi where I was staying, or it just wouldn't call up because I was trying to get some clarity on that. It was some kind of blow to his upper back and neck. It seemed from, and I believe from the description that the deputy had him. Well, he had his taser drawn. He had his taser drawn, and he was right up next to him, and there was a slight shuffle to one side. A step to the left. Yeah, and there was, as he had ordered him to kneel down, I might put my feet out. I might move a foot, too, to try and get down. But he was right there, and I got the impression he hit him from close distance, but I'm not sure what that half spear is. And with regard to the amount of the force used, I struggled as well trying to come up with a fair word. Again, I didn't want to use minimal or certainly not de minimis, but the amount of force used was that single taser, and I think it is fair to look at the video. After Mr. Betts got handcuffed and the officer sat him up, Mr. Betts was pretty vocal about his feelings. Yes, the argument continued. The argument continued. He was very coherent. I mean, he was asking somebody, you know, call my wife so she can come get the truck. But it was not the amount of force that was used was, I'll just use the phrase, calibrated. It was not several tasers. It did not make him unconscious. Some would argue that on a traffic stop where there's no indication that the person who stopped is a danger to the officer or others, that you should wait for backup before you employ any kind of force. What's the response to that? I think that is definitely generally true, that right at the beginning if it's a stop for speeding like that, that in itself doesn't warrant the taser. But I think because it escalated over several minutes in real time, that I really think the aggressive actions and words that Mr. Betts engaged in, particularly when he, saying aggressive stance is just so bland. I mean, he was bowed up. I wonder if waiting for backup in a situation like this is going to de-escalate or further escalate the situation. You're going to have a group of officers? What's going to happen then? They're just going to manhandle him? And that's essentially what waiting for backup leads to. I mean, I guess you have to hope that the show of the number of officers is going to, what's a good word, put him into submission saying, oh, they might do something bad to me, so I better stop now. Or alternatively, if he doesn't, because he's got, he's pretty agitated, and again a colloquial term, he's got a full head of state. Are more officers on the scene really going to help a lot? Well, the response is we don't know until you try. I guess. I'm just asking. Well, I think certainly at the beginning, I mean, with the factors that go in, at least the general factors and severity of the crime at issue, it's a speeding ticket. I mean, we all know that. But the other thing that concerns me is there's no clear way to know if he has a weapon or not. That's one. His hands were visible, it looks like, in the video most of the time, but I thought the officer asked him to turn so that he could see his hands and to face the car. Maybe I misunderstood. I think at the end, once Mr. Betz put his hands, eventually put his hands behind his back, but then the officer said face me. But I do think before that he was saying face the truck. But the point, I'm guessing, an officer, we have people, tragically, officers shot across this country on routine traffic stops, and there was no determination prioritizing that he did not have a gun. Correct. I see my time is up, but to answer your question, yes. Okay, you've saved some time for a vote. I'm going to plead the court. This is a situation where the force, I believe, was clearly unreasonable in light of the circumstances. If you recall the video when Mr. Betz stepped out of the vehicle, there's a lot of talks about him being agitated and aggressive. He did, prior to stepping out of the vehicle, the officer did place his hand on Mr. Betz's arm, and Mr. Betz ejected his hand away, not his shoulder. But when he stepped out of the vehicle, that's when things changed. The officer stepped back, drew his taser, ordered him out of the vehicle. He got out of the vehicle with his hands up. After some extended exchange. This was not immediate compliance. Correct, correct. After some extended, Mr. Betz constantly saying, what's my cause? He's agitated while he's in the car. Maybe at that point the officer would have been reasonable in drawing his taser and possibly using it. But from the point when this gentleman got out of the car, hands up, the officer says, get out. He gets out, hands up. The officer says, put your hands behind your back. He puts his hands behind his back, but he's looking over his shoulder. Still talking to the officer. It's clear that there's nothing in his hands. For some unknown reason, while he's doing this, the officer says, turn and face me. I don't know why he says that. He doesn't order him to go to the back of the car at that time. He doesn't order him to close the door. He says, turn and face me. It appears that there's some kind of misunderstanding as to why my hands are behind my back. You can see my hands. Why do you want me to turn and face you to where now you won't be able to see my hands? So what does the officer do? Less than eight seconds later, he tasers the man. Did he have other options? Certainly. What were the other options, do you think, at that point? He could have ordered Mr. Betz to step further away from the vehicle where the door was still open. He could have ordered Mr. Betz to get on his knees. If there was concerns about the difference in size and maybe Mr. Betz can overpower him, he's completely— So, yeah, he could have ordered that thing. Mr. Betz didn't—he wasn't in the sort of— he had already demonstrated by that point that he was sort of not in the frame of mind to do what the officer was saying. He was questioning. What's your cause? What's your cause to do that? Could the officer have used any kind of force at that point? At that point, the officer had created distance between himself and Mr. Betz and drew his taser. At that point, there was no immediate threat to him, so there was no need for the officer— You don't think the officer could have used any force at that point, not even try to put a hand on him? He could have possibly, but then he would have been giving up the safe distance that he had already created for himself. So a reasonable officer could have just ordered him, go to the ground, get on your knees to further reduce the potential threat to the officer. There was no attempt to handcuff him while he was facing away from the officer and his hands were behind his back? There was. So the entire time Mr. Betz has his hands behind his back and asking, what's my cause, the officer is a few feet away with the taser on him. No attempts to handcuff him, no attempts to further limit Mr. Betz's ability to move if he felt there was a serious threat that Mr. Betz may attempt to harm him. Now, the first time the officer attempted to physically touch him, Mr. Betz batted his hand away, right? The officer put his arm on Mr. Betz's arm. He didn't bat the officer's arm away, but he did jerk his arm away, and that's when he was still sitting in the car, in the trunk. Right. So you think that clearly establishes the law? Hanks clearly establishes that the force used is applicable to this case. The force used against Mr. Betz was unreasonable in light of the circumstances. I mean, the officer didn't really explore whether or not Mr. Betz had a weapon in the vehicle, but the gentleman was on his lunch break. He had just come from his job. Well, the only way you can truly explore is to physically search, and he was the only guy. So he would put his life in danger if he can't search and keep the guy still at the same time. I agree. I agree with that. And if there was concern about a weapon, once he had him out of the vehicle with his hands behind his back, he could have ordered him farther away from the vehicle. Well, if you've got a gun in your waistband, you can be a long way away from the vehicle and still kill the officer. I mean, this is my problem. When it's a single officer and someone is not compliant and you don't know if they have a weapon on their person, you know, he's gotten away from the cab of the vehicle, it's really difficult when someone is not compliant to know if they're armed or not. And your client was not compliant. He was verbally noncompliant. There was never any aggressive physical action taken towards the officer. So I believe a reasonable officer, if he felt that, this could escalate until somebody who's— And he told Mr. Betts, I thought repeatedly, I'm going to tase you, I'm going to tase you, I'm going to tase you, and he did not comply. Is that correct or not? For a period of eight seconds when— How many times did he say, I'm going to tase you? Four times, I believe, in the span of eight seconds. Mr. Betts' hands behind the back, and he says, taser, taser, taser, and he tases him. So that's kind of what he says, taser, taser, taser, and he tases him. And Mr. Betts still has his hands behind his back while the officer's saying taser, taser, taser, and then he tases him. So in Hanks, when there was a half-spear or whatever that was, some kind of blow to his neck, Hanks was at the trunk of the car, I think, with his hands on the car, right? I believe his hands— Yeah, it was the officer says, to your knees, and Hanks makes a small step to the left, and then the officer, boom, hits him. Correct. Yeah, sorry, go ahead. In this case, Mr. Betts wasn't given the opportunity to go down to his knees, which would have been a very reasonable request by the officer. He's bigger than me. He's been verbally noncompliant. I got him out of the vehicle. His hands are behind his back. Next logical step, go down to your knees, sir, and this could have potentially avoided this tasing occurring. I'm just curious. I haven't read the complaint. This was filed in state court first? Yes, sir. And what are the injuries alleged? How are they characterized? Primarily, he injured his cervical and lumbar spine. There's some medical treatment related with that, and then just general anxiety associated with being tased. Okay. There was a—in Hanks, as I recall, there was an investigation by the police department that found the officer had used unreasonable force and that the subject was compliant, right? So is that a distinction here? Was there an investigation here? There was no investigation here. In fact, Mr. Betts pled guilty in state court because the two are resisting— What did he plead guilty to? Resisting an officer. Resisting, okay. Factually, when he jerked his arm away, that's sufficient grounds for resisting arrest and misdemeanor. Right, right, okay. That's why a hex isn't an issue in this case. So not to rehash what the appellant argued, but the incident from— The appellant filed this appeal requesting the court review the video, which I'm sure you have had an opportunity to do. If we look at it from the moment this man gets out of his vehicle with his hands up to the moment he's tased, less than 25 seconds elapsed. And the officer had a simple traffic stop. There's no immediate threat to the officer because there is distance between the two individuals, and Mr. Betts' hands is behind his back. Let me say, he could have asked him to get to his knees. Let's suppose that, in a hypothetical, the person who stopped does not go to his knees. His hands are still visible. He doesn't go to his knees. And after repeated requests, what does an officer do when the person who stopped is noncompliant for an extended period of time? At some point, and I don't know what that extended period of time is, but something more than 25 seconds, I believe the officer would be reasonable at some point using force. If he's tried to de-escalate and minimize the harm to himself in all the reasonable ways that are available to him, in this case, ordering him further away from the vehicle, ordering him down to his knees, if all of these things are unsuccessful, then, yes, at some point, I believe the officer can do what's necessary and escalate the force. But when we have a person who's not actively resisting, that's just passive, verbal questioning nonstop, do we want officers exercising escalating force when there's no threat to his person? Any further questions? Thank you, Counsel. I think we have your argument. Just a few comments, Your Honor. I just want to rehash what's already been argued. My colleague makes a number of points about what officers could have done. But in a qualified immunity-based motion for summary judgment, the burden is on him to show that it was objectively unreasonable to all reasonable officers. It's not a least restrictive means test or a somebody could have done it better or there's some standards out there that he didn't follow. So the test is Mr. Betz has to show that all officers would think this is objectively unreasonable. And in that, I would also add, I mean, the video is in the record. The court can view it. But I believe it shows that the trooper did a couple of times say, if you don't turn and face me, I'm going to tase you. He did make some verbal warnings before the tasing. And I believe, again, the video is going to show that at that point, Mr. Betz was facing the back of the truck. And at least at the beginning of that exchange about put your hands behind your back, at one point, Mr. Betz says, what do you think I'm doing? As his hands are up in the air, not behind his back. And, again, he continues to argue even when he, and I would say, originally puts his hands behind his back. The trooper says, face me. And he's gone. He's still arguing. So, I mean, there's been partial compliance. I mean, in my viewing of the video, when all of that happens, he's standing right next to the open cab. Yes. I would agree with that, with what it shows. He's standing right there. I mean, if we're talking about danger to the officer, his hands are behind him, but his pockets are right there. I mean, there are a number of, you know, if he had something in his pocket, he could have grabbed it pretty quickly if he had something there. But when he warned him, I'm going to tase you if you don't turn, he was still arguing about turning. So, I mean, we had, even after he put his hands behind his back, there was still noncompliance and the continued arguing and noncompliance, not compliance. Unless the court has any questions. Is this a case where the officer said, if you look at me, I'm going to tase you? Is that one of the warnings? No. I don't think, I think, in fact, he told him that, he told him to, the officer said, turn and face me. And Mr. Betz argued. Might have been yesterday's case. I've surprised myself. You come for a lot of these tasings. I think I've surprised myself with my ability to keep them straight in my head two days in a row. But the. This one, unlike yesterday, this one, I mean, we've got everything on the video, right? There's no, no one's arguing that there's a fact issue. No, I think. It's all there. I think with regard to the summary judgment, this was a, I mean, we put the video in. We had some criminal documents in for a separate purpose. Mr. Betz put the two videos in and that's it. Yeah, it's all there. Yeah, there aren't any genuine factual issues on this. It's a nice. It's clean in that way. It's a nice, clean record. This one's got a clean record for the court. Right. And it's on summary judgment. And we, I believe the district court erred when it denied the summary judgment and asked this court to reverse and render judgment in favor of the trooper on this Fourth Amendment claim. Thank you. Thank you, Your Honor. Appreciate it. That will conclude the arguments. This and the other cases presented this week are under submission. Thank you. Thank you.